UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Fernando Kabudi

v.                                                        Civil No. 1:25-cv-359-SE-AJ

FCI Berlin, Warden, et al.


O R D E R


Petitioner Fernando Kabudi, a citizen of Angola currently detained at Federal Correctional Institution, Berlin (FCI Berlin), petitions this court under 28 U.S.C. § 2241 for an order directing the respondents to release him from custody immediately or, alternatively, to schedule a bond hearing in Immigration Court. The respondents oppose the petition. Because the respondents violated their own regulations in re-detaining Kabudi, the court grants the petition, in part.


Background

Kabudi first entered the United States and applied for admission at a port of entry on February 23, 2018. On March 21, 2018, immigration authorities found that he had a credible fear of persecution if returned to Angola. On July 16, 2018, an immigration judge (IJ) denied Kabudi's applications for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). The IJ ordered him removed to the Democratic Republic of the Congo or, alternatively, Angola. In the subsequent months, Kabudi appealed the IJ's denials of relief to the Board of Immigration Appeals (BIA). When the BIA affirmed the IJ, Kabudi filed a petition

for review and a motion for stay of removal with the Second Circuit. Ultimately, on July 22, 2019, the Second Circuit denied the petition for review and lifted the stay of removal. Immigration authorities removed Kabudi to Angola on August 21, 2019.

On January 19, 2023, Kabudi again encountered immigration authorities after crossing the border from Mexico. His son, also a citizen of Angola, accompanied him. United States Border Patrol processed Kabudi to reinstate his prior order of removal. Border Patrol then released Kabudi and his son into the United States "with instructions to report to their local ICE office." Doc. no. 15-1 at 24. Kabudi's Notice of Custody Determination released him under certain conditions "pending a final administrative determination in [his] case." Id. at 8. His Order of Release on Recognizance warned, "Failure to comply with the conditions of this order may result on revocation of your release and your arrest and detention by Immigration and Customs Enforcement." Id. at 10.

Kabudi and his wife have two children: one is a citizen of Angola and the other is a citizen of the United States. From January 2023 until May 20, 2025, the family lived in Maine. Kabudi was the primary caregiver for his children while his wife worked full time to support the family. Kabudi has no criminal history. While living in Maine, Kabudi complied with ICE check-in procedures. Every week, he used a phone app to send his photo to ICE. He also responded to phone calls and messages to verify his address every two months.

Then, on May 17, 2025, Kabudi missed a phone call from ICE. He was at school, so his wife answered. That same day, he sent a message via the app apologizing for missing the call. After two days passed, an officer responded by summoning Kabudi to the local ICE office. Kabudi went to the office straight away.

When Kabudi appeared at the office on May 20, 2025, ICE detained him. Kabudi's

immigration records indicate that he "came to the attention of the . . . office during his scheduled appointment for the Alternatives to Detention (ATD) program." Doc. no. 15-1 at 23. According to Kabudi's sworn affidavit, ICE told him that he was being detained because he had not answered the phone call a few days prior. He states that the officers "would not listen to anything [he] said" and that no one "asked [him] any questions." Doc. no. 11-1. Kabudi's I-213 form documenting his May 20, 2025 apprehension states that he would "be detained in ICE custody pending a reasonable fear interview with the USCIS asylum office." Doc. no. 15-1 at 24.

On May 21, 2025, Kabudi's attorney noticed her appearance with ICE and requested, on Kabudi's behalf, a reasonable fear interview, the assistance of counsel at that interview, and all documentation related to Kabudi's immigration status and history. On July 25, 2025, after repeated requests from Kabudi's counsel, an asylum officer conducted a reasonable fear interview pursuant to 8 C.F.R. § 208.31. The officer found that Kabudi had a reasonable fear of torture if returned to Angola and referred him to withholding-only proceedings. Kabudi also petitioned the First Circuit for review of his reinstated removal order.

ICE failed to respond to counsel's repeated requests for documents. Kabudi attests that in August 2025, he "got some documents saying [he] would have a custody review." Doc. no. 11-1. Kabudi does not read or speak English, but he mailed the documents to his attorney. Though Kabudi's attorney had noticed her appearance months earlier, the respondents themselves never notified her of the custody review. By the time the notice Kabudi mailed reached his attorney, the deadline to submit documentation for the review had passed. An officer told Kabudi that someone would call his attorney and schedule an interview, but neither happened. On August 28, 2025, ICE declined to release Kabudi from detention at his custody review. Counsel never

received any documents from ICE.[1]

The Immigration Court scheduled Kabudi's merits hearing on his withholding claims for October 10, 2025, and then advanced the hearing date to September 25, 2025. To prepare for the hearing while he was detained, Kabudi's counsel sought a phone call, or alternatively an in-person meeting. Kabudi speaks Lingala, and counsel relied on a telephone language service to communicate with him. FCI Berlin said that it would not facilitate a telephone call until September 22nd, three days before Kabudi's hearing and after the IJ's September 20th deadline to submit documents.

On September 19, 2025, concurrent with his difficulties communicating with counsel prior to his hearing before the IJ, Kabudi filed his petition with this court. Noting that Kabudi had not requested expedited relief, the court issued an order recommending that Kabudi contact counsel for the respondents regarding his urgent need to speak with his attorney. The respondents assert that Kabudi was able to communicate with counsel in advance of his hearing, which went forward as scheduled.[2]

On October 7, 2025, the respondents filed their opposition to Kabudi's petition, asking the court to dismiss the claims. Kabudi filed his objection to dismissal on November 10, 2025. Therein, Kabudi informed the court that the IJ had denied his applications for withholding of removal on October 16, 2025, but Kabudi intended to pursue an administrative appeal to the BIA.[3] On March 12, 2026, this court ordered the respondents "to provide . . . any documentation

---

[1] Kabudi also alleges that he has high blood pressure requiring medication, which has been inadequately managed during his detention.

[2] The court agrees with the respondents that Kabudi's claims related to his access to counsel prior to his Immigration Court hearing are now moot.

[3] On December 24, 2025, this court issued an order directing the respondents to show cause on or before January 7, 2026, why, given the court's reasoning in Destino v. FCI Berlin,

surrounding the petitioner's prior release and re-detention including the Order of Supervision, the Notice of Revocation, and any other statement regarding the reasons for revocation of the petitioner's supervised release." On March 18, 2026, the respondents furnished several documents related to Kabudi's immigration history, including his prior Order of Release on Recognizance, but not any Notice of Revocation, documentation of an informal interview, or records related to Kabudi's 90-day custody review.

<u>Legal Framework</u>

By statute, the government must remove a noncitizen during the "removal period," which begins upon the entry of a final order of removal and lasts 90 days. § 1231(a)(1). Detention is mandatory during the removal period. § 1231(a)(2). If the removal period expires prior to removal, ICE may release the noncitizen under an order of supervision pursuant to § 1231(a)(3) or continue to detain him under § 1231(a)(6). Continued detention under § 1231(a)(6) is permissible only for noncitizens who are: (1) inadmissible pursuant to 8 U.S.C. § 1182; (2) subject to certain grounds for removability in 8 U.S.C. § 1227; or (3) determined to be a risk to the community or unlikely to comply with the order of removal.

Section 1231(a)(3) directs that noncitizens who are released following the expiration of the removal period "shall be subject to supervision under regulations prescribed by the Attorney General." "Pursuant to this mandate, ICE has issued regulations contained at 8 C.F.R. § 241.4

---

No. 1:25-cv-374-SE-AJ, 2025 WL 4010424 (D.N.H. Dec. 24, 2025), the court should not issue an order requiring the respondents to afford Kabudi with a bond hearing under the Due Process Clause. Doc. no. 12. On January 7, 2026, the respondents filed a response objecting to the application of the reasoning in <u>Destino</u> to this case because Kabudi "is subject to a reinstated order of removal and was given his post-order custody reviews, satisfying due process." Doc. no. 13 (citing doc. no. 6 at 8–9).

and 8 C.F.R. § 241.13 setting forth procedures concerning custody reviews, release from ICE custody, and revocation of release for individuals with final orders of removal." Huynh v. Wesling, No. 25-CV-13794-AK, 2026 WL 183467, at *2 (D. Mass. Jan. 23, 2026). In general, § 241.4 governs detention, release, and revocation of release when they occur beyond the removal period. See id. Addressing the constitutional limits on detention established by the Supreme Court's decision in Zadvydas v. Davis, 533 U.S. 678 (2001), § 241.13 sets forth procedures for a more specific category of noncitizens: those who challenge their continued detention beyond the removal period because removal is not significantly likely. See Huynh, 2026 WL 183467, at *2.

ICE may revoke an order of release under § 241.4 or § 241.13 if a noncitizen violates the conditions of supervision. If a noncitizen does not violate the conditions of supervision, the regulation governing his release from custody determines ICE's authority to revoke it. Under § 241.4, an ICE official may decide to revoke release in the exercise of his discretion when: "(1) the purposes of release have been served; (2) the [noncitizen] violates any condition of release; (3) it is appropriate to enforce a removal order or commence removal proceedings[;] or (4) the conduct of the [noncitizen], or any other circumstance, indicates that release is no longer appropriate." Martinez v. Hyde, No. cv-25-13035-NMG, 2025 WL 3719656, at *2 (D. Mass. Dec. 23, 2025) (citing § 241.4(l)(2)). Because a noncitizen is released under § 241.13 when he "has provided good reason to believe there is no significant likelihood of removal . . . in the reasonably foreseeable future," ICE may revoke that release only after "(1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future." Kong v. United States, 62 F.4th 608, 619–20 (1st Cir. 2023) (citing 8 C.F.R. § 241.13(i)(2)).

The regulation governing the noncitizen's release from custody does not alter ICE's

6

obligation to provide sufficient process upon revocation of release. The noncitizen (1) "will be notified of the reasons for revocation of his or her release" and (2) will be given "an initial informal interview promptly after his or her return to [ICE] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." See § 241.4(l)(1); § 241.13(i)(3). If the noncitizen continues to be detained after the informal interview, he shall be scheduled for the "normal review process." § 241.4(l)(3); see also § 241.13(i)(2).

"The normal review process will commence with notification to the [noncitizen] of a records review and scheduling of an interview, which will ordinarily be expected to occur within approximately three months after release is revoked." § 241.4(l)(3); see also § 241.13(i)(2). "That custody review will include a final evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release." § 241.4(l)(3). "A decision to retain custody shall briefly set forth the reasons for the continued detention." § 241.4(d). The regulations require ICE to "forward by regular mail a copy of any notice or decision that is being served on the [noncitizen] . . . to the attorney or representative of record." § 241.4(d)(3).

Analysis

Kabudi's petition alleges two counts challenging the legality of his revocation and detention: (1) violation of his Fifth Amendment right to due process, and (2) violation of § 1231 and its implementing regulations, § 241.4 and § 241.13. Doc. no. 1. The respondents oppose the petition on three grounds: (1) Kabudi's statutory and regulatory claim is not ripe for review because at the time of the filing of their opposition he had not been detained for six months, see Zadvydas, 533 U.S. at 701; (2) Kabudi's detention is not unreasonably prolonged because there

is a significant likelihood that he will be removed in the reasonably foreseeable future; and (3) Kabudi's due process rights were not violated because his detention is authorized by and comports with the governing statute and regulations. Doc. no. 6. Kabudi, in reply, clarifies that his petition does not claim that his detention is unreasonably prolonged under Zadvydas,[4] but that the respondents did not adhere to the regulations governing the revocation of his release. Doc. no. 11.

Before turning to the regulatory violations, the court addresses the respondents' arguments, which generally misapprehend the issues in this case. First, a noncitizen need not accumulate six months in detention, as contemplated by Zadvydas, to allege a claim that ICE failed to follow its own regulations when revoking his release. See, e.g., Vo v. Lyons, No. 1:25-CV-533-JL-TSM, 2026 WL 323133, at *4–5 (D.N.H. Jan. 27, 2026) (collecting cases). This is because "once the government elects release subject to supervision, it is bound by its own regulations governing revocation." Id. at *5. Second, the respondents' focus on the likelihood of removal in the reasonably foreseeable future suggests that Kabudi is detained under § 241.13,

---

[4] In a January 21, 2026 status report, Kabudi raised for the first time that he had accrued a Zadvydas claim and invited the court to grant release on that basis. Kabudi has been detained since May 20, 2025, which is now almost eleven months ago. As such, his Zadvydas claim is indeed ripe because his detention has extended beyond the presumptively reasonable six-month period for effectuating his removal. Zadvydas, 533 U.S. at 701. To carry his burden on his Zadvydas claim, Kabudi must show that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Id. Because the court grants release based on the regulatory violations originally alleged in Kabudi's petition, it does not analyze whether he has carried his burden under Zadvydas or whether the respondents have rebutted any such showing. See id. The court notes, however, that the weight of authority suggests that if Kabudi is released pursuant to this court's order and subsequently re-detained, the months he has been detained under § 1231 will count toward any Zadvydas claim he later brings. Siguenza v. Moniz, No. 25-CV-11914-ADB, 2025 WL 2734704, at *3 (D. Mass. Sept. 25, 2025) ("Most courts to consider the issue have concluded that the Zadvydas period is cumulative, motivated, in part, by a concern that the federal government could otherwise detain noncitizens indefinitely by continuously releasing and re-detaining them.").

which controls when there is "no significant likelihood of removal . . . in the reasonably foreseeable future." But nothing in the evidence submitted by the respondents suggests that Kabudi was previously released based on the remote likelihood of his removal, such that the revocation would be governed by the specific provision at § 241.13, not the general provision at § 241.4. See § 241.13(b)(1). As such, the court will proceed under § 241.4, while noting that the procedural failures about which Kabudi complains generally violate both provisions. Compare § 241.4(l) and § 241.13(i); see also Vo, 2026 WL 323133 at *6–7 ("This ambiguity underscores a broader problem: ICE did not clearly articulate the legal or factual basis for its action. The court therefore need not definitively resolve which regulation governs because the notice of revocation is inadequate under either regime."). Third, the respondents' argument that the relevant regulations sufficiently protect Kabudi's due process rights ignores Kabudi's claim that the respondents violated those regulations when they re-detained him, so did not afford him due process.

Turning to Kabudi's arguments, "ICE, like any agency, 'has the duty to follow its own federal regulations.'" Rombot v. Souza, 296 F. Supp. 3d 383, 388 (D. Mass. 2017). If "an immigration regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute, like the opportunity to be heard, and ICE fails to adhere to it, the challenged action is invalid." Id. (internal quotations and alterations omitted). This is true "even when those regulations provide greater protection than is constitutionally required." Jimenez v. Cronen, 317 F. Supp. 3d 626, 638 (D. Mass. 2018). Although ICE has "significant discretion" to detain, release, or revoke the release of removable noncitizens, "the agency must still follow its own regulations, procedures, and prior written commitments in the Release Notification." Rombot, 296 F. Supp. 3d at 389.

Numerous courts have found that the government's failure to follow its own release revocation procedures—for example failure to give the noncitizen the requisite notice and informal interview—renders the noncitizen's re-detention unlawful. See Vo, 2026 WL 323133 at *6–7 ("Because ICE failed to comply with its own regulations governing the revocation of supervised release, Vo's detention is unlawful . . ."); Cherisme v. Moniz, No. cv-25-13690-MJJ, 2025 WL 3759531, at *3 (D. Mass. Dec. 30, 2025) ("Respondents have not shown that [the petitioner] was provided meaningful notice of the basis for revocation as required under their own regulations."); Perez-Escobar v. Moniz, 792 F. Supp. 3d 224, 226 (D. Mass. 2025) ("ICE's conclusory explanation for revoking Petitioner's release did not offer him adequate notice of the basis for the revocation decision such that he could meaningfully respond at the post-detention 'informal interview.'"); Rombot, 296 F. Supp. 3d at 385 (granting release in part because there was "no evidence in the record that [the petitioner] was given an informal interview" and ICE further deprived the petitioner "of his right to a meaningful custody review").

To revoke Kabudi's release, the regulations required the respondents to (1) notify him of the reasons for the revocation, (2) give him an informal interview to respond to those reasons, and (3) conduct a formal custody review. § 241.4(l). Following the formal review, the regulations required the respondents to provide a "decision to retain custody" to Kabudi and his counsel of record. § 241.4(d). In general, the regulations require ICE to "forward by regular mail a copy of any notice or decision that is being served on the [noncitizen] . . . to the attorney or representative of record." § 241.4(d)(3). The record before the court establishes multiple apparent violations of these regulatory obligations.

First, the respondents gave Kabudi insufficient notice upon revocation of the reasons they were revoking his supervised release. § 241.4(l)(1). When Kabudi arrived at the ICE office on

May 20, 2025, "the officers said that they were going to arrest [him] because [he] hadn't answered the phone call." Doc. no. 11-1. As discussed, ICE may revoke release if a noncitizen "violates any condition of release." § 241.4(l)(2). The mandatory conditions of release require that the releasee "report to a specified officer periodically and provide relevant information under oath as directed." 8 C.F.R. § 241.5(a)(1). Indeed, Kabudi's Order of Release on Recognizance requires Kabudi to "report for any hearing or interview as directed" by ICE and indicates that Kabudi must report in "person" or in "writing," "as directed" by the Portland, Maine ICE office. Doc. no. 15-1 at 10. Kabudi alleges that he was at school when ICE called, so his wife answered. That same day, he "sent a message through the app to apologize for missing the call." Doc. no. 11-1. ICE then told him to report in person, which he immediately did. While the arresting officers' statements could suggest that they revoked Kabudi's release because he violated the conditions, his failure to answer the phone does not obviously violate any condition and the respondents have not alleged that any violation occurred.

Even assuming that ICE could revoke Kabudi's release for failing to answer a single phone call, oral notice of that reason was insufficient. In <u>Zhu v. Genalo</u>, the court noted that "in the usual course ICE provides Notices of Revocation," and further reasoned that notice is required by § 241.4(d), which provides that "'[a] copy of any decision . . . to detain [a noncitizen] shall be provided to the detained [noncitizen]' and a decision to retain custody must 'set forth the reasons' for that detention." 798 F. Supp. 3d 400, 412–13 (S.D.N.Y. 2025). The language "[a] copy of any decision" suggests that the regulations contemplate notice in writing. <u>See id.</u>; <u>see also</u> <u>Funes v. Francis</u>, No. 25 CIV. 7429 (PAE), 2025 WL 3263896, at *14 (S.D.N.Y. Nov. 24, 2025) (reasoning that "the logical interpretation of 'notification' is that it anticipates a written notice," a reading that "is supported by [§ 241.4(l)(1)], which refers to the

'reasons . . . *stated* in the notification'" (emphasis added in original)). Though the court ordered the respondents "to provide . . . any documentation surrounding the petitioner's prior release and re-detention including the Order of Supervision, the Notice of Revocation, and any other statement regarding the reasons for revocation of the petitioner's supervised release," the respondents have not provided any Notice of Revocation or any other written notice of the reasons for revocation of Kabudi's release.[5] Thus, the court finds on the record before it that ICE did not sufficiently articulate "a meaningful, individualized basis for revocation sufficient to give the noncitizen notice of the grounds for re-detention and an opportunity to respond." Vo, 2026 WL 323133 at *6.

Second, the record shows that the respondents denied Kabudi an informal interview "promptly after his . . . return to . . . custody" in which he could "respond to the reasons for revocation." § 241.4(l)(1). Courts have identified the failure to provide a noncitizen with a prompt informal interview as a regulatory violation requiring the petitioner's release. See Yang v. Kaiser, No. 2:25-CV-02205-DAD-AC (HC), 2025 WL 2791778, at *5 (E.D. Cal. Aug. 20, 2025) (finding that "failure to provide an informal hearing is alone sufficient to entitle petitioner to" release from custody); Rombot, 296 F. Supp. 3d at 387, 389; M.S.L. v. Bostock, No. 6:25-CV-01204-AA, 2025 WL 2430267, at *11 (D. Or. Aug. 21, 2025) (collecting cases). Here, Kabudi recounts that the officers who arrested him told him he "couldn't speak anymore" and "would not listen to anything [he] said" after they notified him that they were revoking his

---

[5] The missing Notice of Revocation creates another problem. Without it, the court cannot determine whether the official who revoked Kabudi's release had the authority to do so, which could provide an independent basis to release Kabudi. See Mejia v. US Immigr. & Customs Enf't & Removal Operations, No. 26-CV-205-LM-AJ, 2026 WL 936066, at *6–7 (D.N.H. Apr. 7, 2026).

release. Doc. no. 11-1. Kabudi did not receive any process related to his re-detention until his formal custody review in August 2025, three months after his revocation. Doc. no. 11-1. Thus, the respondents failed to provide Kabudi a "prompt" informal interview so that he could contest the reasons for his revocation as required by § 241.4(l)(1).

Third, the respondents failed to follow their own procedures surrounding the "normal review process." See § 241.4(l)(3). The regulations provide that the "normal review process will commence with notification to the [noncitizen] of a records review and scheduling of an interview." Id. Kabudi, however, attests that although he received written notice of the custody review in English, ICE never interviewed him prior to the custody determination. Further, there is no evidence that ICE conducted a "records review," id., and counsel did not receive the notice Kabudi forwarded to her until after the deadline for submitting documentation had passed. Similarly, in Rombot, the court found that ICE "depriv[ed] [the petitioner] of his right to a meaningful custody status review" by conducting the review when the petitioner's counsel "had not yet submitted any documentation in support of [the petitioner's] release." 296 F. Supp. 3d at 388.

Further, the regulations specifically require ICE to "forward by regular mail a copy of any notice or decision that is being served on the [noncitizen] . . . to the attorney or representative of record." § 241.4(d)(3). Despite this obligation, ICE failed to notify Kabudi's counsel of the custody review, ignored counsel's repeated requests for documentation related to Kabudi's re-detention, and never served on counsel any decision to retain custody. See Cruz v. Bondi, No. 25-CV-262-JJM-PAS, 2025 WL 3295485, at *9 (D.R.I. Nov. 26, 2025) (finding a violation of § 241.4(d)(3) where the petitioner's counsel had noticed his appearance but "ICE did not send a copy of its decision to continue [the petitioner's] detention to his attorney"). What is

13

more, in response to this court's order, the respondents failed to furnish any written notice of revocation or written decision to retain custody, which tends to confirm that ICE did not serve such documents on counsel.[6] Because ICE entirely excluded Kabudi's counsel from the custody review process and failed to provide him the required interview or document review, he was denied a meaningful opportunity to be heard regarding his continued detention. See Jimenez, 317 F. Supp. 3d at 635 (finding procedural violations where the noncitizen "but not her attorney, was given a notice . . . of a custody review" and ICE "decided to continue [the petitioner's] detention before her attorneys had an opportunity to provide information in support of her release").

In sum, the record exposes multiple violations of ICE's procedural obligations. The respondents provided no written notice of the reasons for revocation to Kabudi or his counsel. § 241.4(l)(1). The respondents did not afford Kabudi an "initial informal interview promptly after his . . . return to . . . custody . . . to respond to the reasons for revocation." Id. The "normal review process" did not comply with the regulations in several ways, most significantly that ICE did not provide counsel notice of the upcoming proceedings or a copy of the ultimate decision. § § 241.4(l)(3), (d)(3). The regulatory requirements that the respondents disregarded were not "mere technicalit[ies]"; rather, they were "core component[s] of the regulatory scheme that implements . . . constitutional limits." See Vo, 2026 WL 323133, at *4.

---

[6] The court reiterates that there is no documentation in the record surrounding Kabudi's release revocation or custody review, save for his own affidavit. The process here is even more opaque than in Cherisme, where the court reasoned that "[w]hat little facts that have been established suggest that Mr. Cherisme was not given" meaningful notice and an opportunity to be heard. 2025 WL 3759531, at *3. In Cherisme, the record at least contained the Notice of Revocation and some documentation of an informal interview, albeit with "[m]uch information . . . missing." Id. at *2. Here, the respondents have furnished no documentation at all to support their bald assertion that Kabudi "received and will continue to receive the post order custody review required under 8 C.F.R. § 241.4, satisfying the requirements of procedural due process." Doc. no. 6 at 8.

The appropriate remedy for ICE's failure to adhere to its own procedural regulations when it revokes a noncitizen's supervised release is to order release under the previous conditions. See, e.g., Rombot, 296 F. Supp. 3d at 388–89; Jimenez, 317 F. Supp. 3d at 657.


Conclusion

For the reasons set forth above, the respondents are ordered to release Kabudi immediately under the same conditions stated in his prior Order of Release on Recognizance, doc. no. 15-1 at 10–13. The respondents shall file a status report within seven days, on or before April 21, 2026.


SO ORDERED.


_____
Samantha D. Elliott
United States District Judge


April 14, 2026


cc:      Counsel of record.

15